UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:25-CV-780-FL

| | |
|---|---|
| GILBERT BRYAN,<br><br>               Plaintiff,<br><br>v.<br><br>CAPITAL ONE BANK (USA), National<br>Association,<br><br>               Defendant. | ORDER AND<br>MEMORANDUM AND<br>RECOMMENDATION |

This matter is before the court on Plaintiff Gilbert Bryan's application to proceed *in forma pauperis*, [DE-2], and for frivolity review of the complaint and amended complaint, [DE-1, -8], pursuant to 28 U.S.C. § 1915(e)(2)(B). Plaintiff has demonstrated sufficient evidence of inability to pay the required court costs and the application to proceed *in forma pauperis* is allowed; nevertheless, because the complaint and amended complaint fail to state a plausible claim upon which relief can be granted, it is recommended that the case be dismissed.

## I.  Standard of Review

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the court shall dismiss the complaint if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks money damages from a defendant immune from such recovery. 28 U.S.C. § 1915(e)(2)(B)(i–iii); *see Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994) (explaining Congress enacted predecessor statute 28 U.S.C. § 1915(d) "to prevent abuse of the judicial system by parties who bear none of the ordinary financial disincentives to filing meritless claims"). A case is frivolous if it lacks an arguable basis in either law or fact. *See Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *McLean v. United States*,

566 F.3d 391, 399 (4th Cir. 2009) ("Examples of frivolous claims include those whose factual allegations are 'so nutty,' 'delusional,' or 'wholly fanciful' as to be simply 'unbelievable.'"). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Neitzke*, 490 U.S. at 327. A claim lacks an arguable basis in fact when it describes "fantastic or delusional scenarios." *Id.* at 327–28.

In determining whether a complaint is frivolous, "a court is not bound, as it usually is when making a determination based solely on the pleadings, to accept without question the truth of the Plaintiff's allegations." *Denton v. Hernandez*, 504 U.S. 25, 32 (1992). Rather, the court may find a complaint factually frivolous "when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Id.* "The word 'frivolous' is inherently elastic and not susceptible to categorical definition. . . . The term's capaciousness directs lower courts to conduct a flexible analysis, in light of the totality of the circumstances, of all factors bearing upon the frivolity of a claim." *Nagy v. Fed. Med. Ctr. Butner*, 376 F.3d 252, 256–57 (4th Cir. 2004) (some internal quotation marks omitted). In making its frivolity determination, the court may "apply common sense." *Nasim v. Warden., Md. House of Correction*, 64 F.3d 951, 954 (4th Cir. 1995).

To state a claim on which relief may be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level . . . .'" *Twombly*, 550 U.S. at 555. While a complaint need not contain detailed factual allegations, the plaintiff must allege more than labels and conclusions. *Id.*

In the present case, Plaintiff is proceeding *pro se*, and pleadings drafted by a *pro se* litigant

2

are held to a less stringent standard than those drafted by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). The court is charged with liberally construing a pleading filed by a *pro se* litigant to allow for the development of a potentially meritorious claim. *See id.*; *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Noble v. Barnett*, 24 F.3d 582, 587 n.6 (4th Cir. 1994). Nevertheless, the principles requiring generous construction of *pro se* complaints are not without limits, and the district courts are not required "to conjure up questions never squarely presented to them." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## II. Discussion

Plaintiff initially filed a form complaint against Capital One, N.A., alleging violations of the Truth in Lending Act ("TILA"), the Fair Debt Collection Practices Act ("FDCPA"), the Fair Credit Reporting Act ("FCRA"), and the Equal Credit Opportunity Act ("ECOA"), [DE-1], accompanied by a narrative complaint that also alleged state law claims for breach of contract and unjust enrichment, as well as a request for declaratory relief, [DE-1-1], with exhibits, [DE-1-3 to -1-7]. Plaintiff subsequently filed a first amended complaint, which was missing a page and was unsigned, [DE-7], followed by a corrected version of the first amended complaint, which is the operative complaint, [DE-8]. The first amended complaint names Capital One Bank (USA), National Association ("Capital One") as the defendant and asserts violations of TILA, the FCRA, the ECOA, and state law. [DE-8].

Plaintiff alleges the following facts in the first amended complaint: he holds a Kohl's Rewards Visa credit card (the "account") issued and serviced by Capital One; in or about August–September 2025, a dispute arose concerning the status and servicing of the account, including payment application and account access; Plaintiff transmitted multiple written notices to Capital One disputing the account status and tendering payment, including: written notice and tender sent

3

on or about August 1, 2025, follow-up notice and tender sent on or about September 8-10, 2025, and final written notice sent on or about September 25, 2025; each notice was transmitted by certified mail, and Capital One received each communication; on or about September 18, 2025, Plaintiff remitted a $64.00 certified cashier's check issued by State Employees' Credit Union to Capital One as payment on the account; Capital One accepted and negotiated the certified check evidencing receipt of payment; following receipt and negotiation of the payment, Capital One reopened or restored the account, and, shortly thereafter, Capital One closed the account again, restricted Plaintiff's access, and failed to provide a clear explanation of the account's status; Capital One did not provide Plaintiff with a written adverse action notice stating the specific reasons for the account closure; Capital One subsequently furnished negative or adverse information regarding the account to one or more consumer reporting agencies; Plaintiff disputed the accuracy of the furnished information and the handling of the account; Capital One failed to reasonably investigate the dispute and continued furnishing inaccurate or misleading information; and as a result of Capital One's actions, Plaintiff suffered damages, including loss of credit access, credit harm, emotional distress, and out-of-pocket costs. Am. Compl. [DE-8] at 2–3. Plaintiff did not include the exhibits from the initial complaint with the amended complaint but given Plaintiff's *pro se* status the court considers them, nonetheless, in conducting its initial review. *See Holley v. Combs*, No. 22-6177, 2025 WL 1035288, at *2 (4th Cir. Apr. 8, 2025) (citing *Garrett v. Elko*, 120 F.3d 261, 1997 WL 457667, at *1 (4th Cir. 1997) ("[I]n order to determine whether the claim of a *pro se* plaintiff can withstand a motion to dismiss, it is appropriate to look beyond the face of the complaint to allegations made in any additional materials filed by the plaintiff.")).

### a. TILA Claim

Plaintiff alleges that "Capital One failed to properly credit Plaintiff's payment and failed

to clearly and accurately disclose the status of the Account after receiving payment," in violation of 15 U.S.C. § 1666, and "Plaintiff's written notices and disputes identified billing and payment-application errors on the Account, triggering Capital One's duties under 15 U.S.C. § 1666 to investigate and correct or explain the alleged errors in writing." Am. Compl. [DE-8] at 3–4.

> The Truth in Lending Act was enacted in 1968 to promote "the informed use of credit." Pub. L. No. 90-321, 82 Stat. 146 (1968). It required creditors to provide certain disclosures and to issue periodic statements to debtors. It also imposed civil liability on those who didn't comply with those provisions. It set out rules about credit advertising, regulated "Extortionate Credit Transactions," and restricted garnishment.
>
> In 1974, six years after the first iteration of TILA was passed, Congress amended TILA via the Fair Credit Billing Act, which created more protections against "inaccurate and unfair credit billing and credit card practices." Pub. L. No. 93-495, 88 Stat. 1500 (1974) (codified as amended at 15 U.S.C. § 1666–1666j). Those additions included provisions about disclosing fair credit billing rights and the correction of billing errors, among other things.

*Lyons v. PNC Bank, N.A.*, 112 F.4th 267, 272 (4th Cir. 2024). "The FCBA, 15 U.S.C. § 1666, which is enforced by [TILA], and implemented through Regulation Z, 12 C.F.R. § 1026, 'provides an avenue by which a debtor may challenge perceived billing errors on any credit card account statement and procedures that a creditor must follow in responding to properly raised billing errors.'" *Cann v. Bank of Am. Corp.*, No. 3:23-CV-00408-RJC-DCK, 2023 WL 5088977, at *2 (W.D.N.C. July 26, 2023) (quoting *Esquibel v. Chase Manhattan Bank USA, N.A.*, 487 F. Supp. 2d 818, 825 (S.D. Tex. 2007) (citing 15 U.S.C. § 1666)). "To succeed on a claim under § 1666, plaintiff must show (1) the existence of a billing error, (2) timely notification of the billing error, and (3) failure of the bank issuing the card to comply with the procedural requirements of Section 1666." *Id.* (quoting *White v. Chase Bank USA, N.C.*, No. 5:16-CV-00176-BR, 2017 WL 1131898, at *2 (E.D.N.C. Mar. 24, 2017)).

Here, Plaintiff's allegations to support his claim regarding a billing error—that Capital One

5

failed to properly credit Plaintiff's payment and failed to clearly and accurately disclose the status of the Account after receiving payment—are conclusory and, thus, insufficient to state a claim. To the extent Plaintiff is referring to Capital One's failure to credit his account for purported "tender" sent in August and September, 2025, it is simply not plausible that the "Notice of Claim to Interest," "Opportunity to Cure," and "Default Judgment" and the accompanying payment stubs marked "pay to bearer," which Plaintiff filed in the record, [DE-1-3, -1-4], were legitimate legal tender. *See Peterson v. USAA Fed. Sav. Bank*, No. 4:24-CV-00016-SDJ-AGD, 2025 WL 3481770, at *3 (E.D. Tex. Sept. 2, 2025) (dismissing TILA claim and finding "highly implausible" plaintiff's claim that sending notice of claim to interest, opportunity to cure, and default judgment letters with an unspecified allegedly negotiable instrument amounted to a legitimate payment) (citing *Bryant v. Wash. Mut. Bank*, 524 F. Supp. 2d 753, 758 (W.D. Va. 2007) (finding that the plaintiff did not allege facts that would allow the court to infer the plaintiff's payment was legitimate), *aff'd*, 282 F. App'x. 260 (4th Cir. 2008)); *Roshan v. Cap. One Fin. Corp.*, No. 25-CV-2653 (RER) (JAM), 2026 WL 469681, at *3 (E.D.N.Y. Feb. 19, 2026) ("Courts have consistently held that a payment stub is not a negotiable instrument and cannot be converted into one by unilaterally adding such language.") (collecting cases). Accordingly, because Plaintiff has failed to plausibly allege the first element of a § 1666 claim, it should be dismissed.

### b. ECOA Claim

Plaintiff alleges that Capital One took adverse action by closing his account and restricting access after receiving payment and failed to provide Plaintiff with a written adverse action notice stating the specific reasons for the action, as required by 15 U.S.C. § 1691(d) and 12 C.F.R. § 1002.9. Am. Compl. [DE-8] at 4.

The ECOA was originally enacted to protect against discrimination in lending practices,

6

*see* 15 U.S.C. § 1691(a)(1), and the ECOA and its accompanying Regulation B, 12 C.F.R. § 202, contain notification requirements mandating "a creditor to provide written notice of any adverse action taken in connection with an application for credit within a certain timeframe and pursuant to certain content guidelines." *Sweat v. Suntrust Bank, N.A.*, No. CV CBD-17-0756, 2018 WL 4283053, at *2 (D. Md. Sept. 7, 2018) (quoting *Coulibaly v. J.P. Morgan Chase Bank, N.A.*, Civ. Ac. No. DKC-10-3517, 2012 WL 3985285, at *4 (D. Md. Sept. 7, 2012) (citing 15 U.S.C. § 1691(d))). Furthermore, "when a creditor fails to comply with these requirements, it is in violation of the ECOA, regardless of whether it engaged in any prohibited discrimination." *Id.* (quoting *Coulibaly*, 2012 WL 3985285, at *4). To state a claim under § 1691(d), a plaintiff must allege that: (1) defendant is a "creditor"; (2) plaintiff is an "applicant"; (3) the creditor took adverse action with respect to plaintiff's application for credit; and (4) the creditor failed to provide the plaintiff with a notification that complied with the ECOA. *Fralish v. Bank of Am., N.A.*, No. 3:20-CV-418 RLM-MGG, 2021 WL 4453735, at *2 (N.D. Ind. Sept. 29, 2021) (citing *Stoyanovich v. Fine Art Capital, LLC*, No. 06 Civ. 13158 (SHS), 2007 WL 2363656, at *2 (S.D. N.Y. Aug 17, 2017); *Moffitt v. Bank of America, N.A.*, No. 1:09-cv-977-WTL-JMS, 2009 WL 5217147, at *2 (S.D. Ind. Dec. 29, 2009); 15 U.S.C. § 1691(d)(1)-(3)). The term "adverse action" is defined as "a denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested" but it expressly excludes "a refusal to extend additional credit under an existing credit arrangement where the applicant is delinquent or otherwise in default, or where such additional credit would exceed a previously established credit limit." 15 U.S.C. § 1691(d)(6).

Here, as explained above, Plaintiff alleged that he sent Capital One a "Notice of Claim to Interest," "Opportunity to Cure," and "Default Judgment," along with payment stubs marked "pay

7

to bearer," which he referred to as "Tender of payment," and instructed it be applied to his account. [DE-1-3, -1-4]. Plaintiff further alleges that after he sent Capital One a $64.00 certified check, which was negotiated, Capital One reopened the account and then closed it again without providing a clear explanation. Am. Compl. [DE-8] at 2–3. The plausible inference from Plaintiff's allegations is that Capital One closed the account because he attempted to pay his account by improper means, reopened the account to process a legitimate payment, and then closed the account. *See Nasim*, 64 F.3d at 954 (allowing the court to "apply common sense, reject the fantastic, and rebut alleged matters with judicially noticeable facts" on review of cases filed *in forma pauperis*). On similar facts, the court in *Roshan* dismissed an ECOA claim because the plaintiff "attempted to pay his balance using an invalid method, [so] he cannot demonstrate that he remained 'qualified' for the extension of credit or that Capital One's decision to end the banking relationship was discriminatory." 2026 WL 469681, at *3. Furthermore, Plaintiff has not alleged facts from which the court could find that Capital One took adverse action with respect to Plaintiff's "application" for credit where he alleged he was an existing account holder, Am. Compl. [DE-8] at 2. *See Fralish*, 2021 WL 4453735, at *2 ("The vast majority of courts that have addressed the issue have found that the statutory definition of 'applicant' is not ambiguous, and that existing account holders . . . aren't 'applicants' within the plain meaning of the ECOA because they weren't applying for an extension, renewal, or continuation of [ ] existing credit when the alleged violation (in this case the alleged failure to provide the notice of adverse action required under the statute) occurred, and don't have standing to bring a claim under the ECOA's notice provisions."). Accordingly, Plaintiff's ECOA claim should be dismissed.

### c. FCRA Claim

Plaintiff alleges that Capital One furnished information to consumer reporting agencies

8

regarding his account that was "inaccurate, incomplete, or misleading," and after receiving notice of Plaintiff's dispute, Capital One "failed to conduct a reasonable investigation and failed to correct or delete inaccurate information," in violation of 15 U.S.C. § 1681s-2(b).

The purpose of the FCRA is to ensure "fair and accurate credit reporting." 15 U.S.C. § 1681(a)(1). Section 1681s-2(b) sets forth the duties of "furnishers of information." As one court explained, under § 1681s-2(b), if a consumer notifies a credit reporting agency that they dispute the completeness or accuracy of particular information and the agency notifies the person who furnished the information of the consumer's dispute, the furnisher must investigate the claim, report the results of the investigation to the agency, notify any other credit reporting agencies to which the furnisher had provided that information of the incompleteness or inaccuracy, and revise the information accordingly. *Hampton v. Wells Fargo Bank, N.A.*, No. CV DLB-22-1712, 2023 WL 6200009, at *5 (D. Md. Sept. 22, 2023). To state a claim under § 1681s-2, a plaintiff allege facts that would show "(1) the plaintiff submitted a dispute over the accuracy of information on a credit report to a [consumer reporting agency]; (2) the [agency] notified the furnisher of that dispute; [and] (3) the furnisher failed to conduct a reasonable investigation to determine whether the disputed information can be verified." *Hall v. Halsted Fin. Servs., LLC*, No. 6:25-CV-00068, 2025 WL 3515266, at *3 (W.D. Va. Dec. 8, 2025) (citing *Roberts v. Carter-Young*, 131 F.4th 241, 249 (4th Cir. 2025); *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 430 (4th Cir 2004)).

Here, Plaintiff's amended complaint contains only conclusory allegations that parrot the statute and are insufficient to state a claim under the FCRA § 1681s-2(b). Plaintiff does not identify what information was reported incorrectly, or how Capital One failed to conduct a reasonable investigation. *See id.* (finding plaintiff's allegation that the creditor "failed to reasonably investigate" the dispute was conclusory and not supported with additional factual allegations, so

9

the § 1681s-2(b) claim was subject to dismissal); *Ramirez v. LVNV Funding*, No. 24-CV-2335-ABA, 2025 WL 1665388, at *8 (D. Md. June 12, 2025) (finding "mere assertion that [the creditor] did not conduct a thorough investigation without any other factual basis is conclusory," and "the absence of details about the content of Plaintiff's dispute means Plaintiff has not plausibly alleged that [the creditor] failed to conduct a 'reasonable' investigation of the disputed information or that the inaccurate information was readily verifiable.") (citations omitted). Accordingly, Plaintiff's § 1681s-2(b) claim should be dismissed.

### d. State Law Claims

Plaintiff alleges that Capital One breached its consumer credit contract with Plaintiff by "failing to apply payment consistently, closing the Account without contractual justification, and furnishing adverse information" and that Capital One was unjustly enriched by retaining Plaintiff's payment while denying Plaintiff account access and accurate reporting. Am. Compl. [DE-8] at 5. Plaintiff's state law claims fail because they are based on a purported "tender" that, as explained above, the allegations of the complaint and exhibits in the record plainly show was not valid. Accordingly, these claims should also be dismissed.

### e. Declaratory Relief

Finally, Plaintiff seeks a declaration that Capital One violated federal law and its contractual obligations. The declaratory judgment claim is duplicative of or dependent on Plaintiff's other claims, which are subject to dismissal. *See Greenbrier Royalty Fund II, LLC v. Antero Res. Corp.*, No. 1:21-CV-134, 2024 WL 4009665, at *5 (N.D.W. Va. Aug. 30, 2024) ("When declaratory relief would be duplicative of claims already alleged, dismissal is warranted.") (quoting *Chevron U.S.A. Inc. v. Apex Oil Co., Inc.*, 113 F. Supp. 3d 807, 824 (D. Md. 2015)). Accordingly, the declaratory judgment claim should also be dismissed.

10

## III. Conclusion

For the reasons stated herein, the application to proceed *in forma pauperis* is allowed, and it is recommended that the case be dismissed for failure to state a claim.

IT IS DIRECTED that a copy of the Memorandum and Recommendation be served on Plaintiff. You shall have until **March 17, 2026** to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct her or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If you do not file written objections to the Memorandum and Recommendation by the foregoing deadline, you will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, your failure to file written objections by the foregoing deadline will bar you from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).**

Submitted, the 3d day of March, 2026.

Robert B. Jones, Jr.
United States Magistrate Judge

11